D. Alice Taylor, Appellee, v. Champaign County Abstract Company and Fred Price, Appellants. James Edwin Filson and Lena Filson, Appellees.

Gen. No. 9,028.

Opinion filed January 15, 1937.

CLARK & NOEL, of Urbana, and ASA S. CHAPMAN, of Champaign, for appellants.

R. E. WINKELMANN, of Urbana, and FRANK B. LEONARD and JOHN L. FRANKLIN, both of Champaign, for appellees.

MR. PRESIDING JUSTICE FULTON delivered the opinion of the court.

This was a bill filed by the appellee, D. Alice Taylor, to foreclose a $3,000 mortgage and to enforce payment of the indebtedness secured thereby. The suit was based substantially upon the following facts: On December 1, 1921, the note and mortgage described in the bill of complaint were executed by William E. Atkinson and Lena M. Atkinson, his wife, and delivered to Mary E. Webber in payment of part of the purchase price of a tract of real estate located in the city of Urbana, Illinois. The note was made payable to Mary

E. Webber, due three years after date, and bore interest at the rate of six per cent per annum. On October 26, 1923, William E. Atkinson contracted to sell the above mentioned premises to James Edwin Filson, one of the appellees, and on the same date a warranty deed was executed and placed in escrow with the contract at the Urbana Banking Company. On December 1, 1924, the indebtedness, evidenced by the note and mortgage, became due and the major part of the controversy in this cause arises over the nature of the transaction which took place between the appellee, James Edwin Filson, and Mary E. Webber on that date. Mary E. Webber was an elderly lady 88 years of age and testified that at the time of the transaction Filson came to her house and paid off the debt; that she turned over to Filson all of the papers and that she signed all of the papers Filson gave her to sign although she does not remember the exact nature thereof; that she received her money and does not know what became of the mortgage or note afterwards. She further testified that she did not stamp the note paid or mark it in any way so far as she could remember. Filson testified that he visited Mrs. Webber at an earlier date for the purpose of securing an extension of the note and that she stated that she had made other arrangements for the use of the money and wanted the note paid; that he told her that he would make arrangements so that she would receive her money on the due date and that Mrs. Webber told him that she would send the papers to her son George Webber, and that the matter could be handled through him. Filson further testified that the transaction was consummated through George Webber; that he telephoned George Webber at the First National Bank of Urbana and told him to get the papers all together, have the note assigned in blank and to prepare a release deed of the mortgage, as he wanted everything in shape to be handled by the Illi-

nois Trust and Savings Bank; that he was president of that bank and in charge of the real estate loans at that time; that on the same date he took a check or draft from the real estate loan account of the bank and delivered it to George Webber, receiving in return the note indorsed in blank, the mortgage and the release deed; that he had previously made arrangements with the Illinois Trust and Savings Bank for the purchase of the mortgage and note by the bank and that the money paid to George Webber was funds of that bank; that the release was delivered in escrow to be held with all the other papers and to be delivered when the note was paid off; that all of the papers were delivered to S. A. Wright who handled the real estate loan accounts for the bank; that the abstract covering the premises was, together with the contract and deed from Atkinson, in the possession of and under escrow at the Urbana Banking Company.

On the same date, James Edwin Filson and Lena Filson executed an extension agreement extending the time of payment on the principal of said mortgage indebtedness to December 1, 1927. On October 15, 1927, Filson filed for record the deed executed by William E. Atkinson, pursuant to the contract of purchase, dated October 26, 1923. The deed was made subject to the mortgage of Mary E. Webber which indebtedness the grantee assumed and agreed to pay with interest. On December 1, 1927, Filson and wife executed a second agreement extending the date of payment of the principal of said mortgage debt to December 1, 1932. On December 3, 1927, D. Alice Taylor, appellee, purchased said mortgage note from the Illinois Trust and Savings Bank.

Prior to December 1, 1927, the appellant, James Edwin Filson and Wallace T. Filson operated the Champaign County Abstract Company as a copartnership and Filson claimed to have held the title to the real

estate described in said mortgage as an asset of said partnership. On December 1, 1927, the said James Edwin Filson, Lena Filson and Wallace T. Filson incorporated the Champaign County Abstract Company, one of the appellants, under the laws of the State of Illinois. On December 27, 1927, the premises described in the mortgage were conveyed by the Filsons to the Champaign County Abstract Company, the conveyance being made subject to the mortgage of Mary E. Webber, which the grantee assumed and agreed to pay with interest. Interest was paid on the mortgage indebtedness by the new corporation each six months from June 1, 1928, up to and including June 1, 1931. On January 28, 1931, Walter E. Price, Ben Price, Ray Price and the appellant Fred Price, purchased all of the stock of the Champaign County Abstract Company. On September 15, 1931, the Champaign County Abstract Company conveyed, by warranty deed, the premises described in said mortgage to Walter E. Price, which deed recited that the conveyance was made subject to existing liens, if any, which the grantee assumed. and agreed to pay. The appellant Fred Price subsequently obtained title to the same premises by warranty deed from Walter E. Price.

The cause was referred to a special master in chancery who made report and found the equities in favor of appellants. On a hearing in the circuit ocurt of Champaign county, exceptions to the master's report were sustained and foreclosure decreed in favor of D. Alice Taylor, appellee. The decree also found that appellant, the Champaign County Abstract Company, through the assumption clause in ,its deed was primarily liable for the payment of the debt secured by the mortgage and that the appellees, James Edwin Filson and Lena Filson, were secondarily liable for same. In seeking to reverse the decree the appellants rely chiefly upon the contention that the transaction

between Mary E. Webber and James Edwin Filson constituted a payment of the mortgage debt; that the delivery of a release of the mortgage by Mary E. Webber to James Edwin Filson had the effect of abating the lien of the mortgage and that the transaction between James Edwin Filson and the Illinois Trust and Savings Bank was a reissuance of the note which could not in any manner re-establish the lien. To support this contention the appellants are compelled to depend largely upon the testimony of Mary E. Webber. If the intention of the parties at the time of the transaction bears at all upon the legal significance to be given the business transacted between this witness and James Edwin Filson, then her evidence is entirely unsatisfactory. Her advanced age, the period of time elapsing between December 1, 1924 and the year 1933 when she was called upon to testify, and her total lack of memory concerning the details render her testimony of little value in so far as the real transaction was concerned. She was only sure of two matters, one was that Filson called upon her and the other was that she was paid the money due her. Filson, although an interested witness, told a rather clear and convincing story of the transaction. He is corroborated, in the main, by documentary proof. The note shows that it was indorsed in blank by Mrs. Webber as per instructions given by Filson to her son George Webber and also that it was not stamped paid or canceled. The fact that a release was given instead of an assignment does not vitiate the transaction. We do not commend the manner in which the loan was handled by Filson through his own bank, and by the release instead of an assignment, but do not feel that the mortgage became void or was discharged because of the methods employed.

Appellants insist that the evidence fails to show Mrs. Webber knew the bank was interested in any way

and there could be no meeting of the minds that would consummate a contract of sale. They urge that the testimony of Filson consists mainly of self serving statements which were not competent evidence. However, Filson's testimony was given in rebuttal of the testimony of Mrs. Webber who was called to testify about the transaction by the appellants. This qualified Filson to testify concerning the same matter. The case of *White v. Fisher,* 62 Ill. 258, is presented as authority for their position. In that case a mortgagor paid certain matured notes to the payee, given by the firm of which he was a member, and with money which his brother had assisted him to raise through the loan of notes owned by the brother and used as collateral. The mortgagor had an agreement with this brother that the notes taken up should be assigned to him and held as security for the notes he had allowed the firm to pledge. At the time the notes were paid the payees were requested to indorse the notes in blank without any knowledge on their part that the notes were to be reissued. After the entire series of notes had matured the payees filed a bill to foreclose. The brother answered claiming to own the first matured notes and that he was entitled to priority of payments out of the proceeds of the sale. The court held that the brother, as holder of the notes, was entitled to the benefit of the mortgage security as against the mortgagor but as to the holders of the remaining notes his rights were postponed. There is no such question of preference in this case but appellants are insisting that the mortgage was definitely paid. We believe the evidence fairly shows that the indorsement of the note in blank and delivery of the note to the Illinois Trust and Savings Bank effected an assignment of the mortgage and that the transaction between Mary E. Webber and Filson did not amount to a payment.

Appellants strenuously insist that the court acquired no jurisdiction of the res in this case. The basis of this contention is that if a mortgage still exists that the mortgage title remains in Mary E. Webber as trustee for the holder of the note; that Mary E. Webber is not a party to this proceeding and consequently the mortgage title is not within the jurisdiction of the court and the decree directing foreclosure upon it is a nullity. Citing the cases of *Hayes v. Owen,* 69 Ill. App. 553, and *Lambert v. Hyers,* 22 Ill. App. 616. These were cases involving trust deeds and hold that the trustee is a necessary party. We know of no case which holds that where a mortgagee in an ordinary mortgage has indorsed and delivered the mortgage note and also delivered the mortgage deed itself and other title papers to an assignee, that such mortgagee is an indispensable party to foreclosure proceedings. The transfer of the note or obligation evidencing a debt operated as an assignment of the mortgage securing the debt and it is not entirely necessary that the mortgage papers be transferred or that a written assignment be made. In *Fountain v. Bookstaver,* 141 Ill. 461, 466, the court held that if a legal title to the notes passed from the mortgagee to a third party that the latter thereby became the equitable assignee of the mortgage. In *Sedgwick v. Johnson,* 107 Ill. 385, the court said: ''It was a matter of no consequence whether defendant indorsed the notes or not. The delivery of them to complainants was an equitable assignment of the notes, and that would enable complainants to commence and prosecute a suit to foreclose the mortgage securing the same, in their own names.'' In our judgment Mary E. Webber was not a necessary party to the foreclosure proceeding.

It further appears to us that the appellants, as grantees under deeds which assumed and agreed to pay the mortgage, are estopped to question whether or not the

mortgage was in fact paid. The Champaign County Abstract Company accepted a deed of the premises in which the mortgage was specifically mentioned and described and which indebtedness the said corporation assumed and agreed to pay. It did pay semiannual interest upon the mortgage for more than three years and has little standing now in a court of equity to make any objections to the validity of the mortgage and the notes secured thereby. The estoppel of the Champaign County Abstract Company extends to its successors in title, one of whom was the appellant Fred Price. The claim of the latter grantee that he had no knowledge of the mortgage on the property until some time after he and his family purchased the stock in the corporation is not material. The mortgage and the deeds were all of record and it was the duty of the purchasers of stock to investigate the condition of the corporation before purchasing any interest therein.

It is further urged by the appellants that where the matter of estoppel is relied upon for defense it must be specifically pleaded as such. In this case the appellee, D. Alice Taylor, by leave of court, amended her bill of complaint upon the date of the ruling of the chancellor upon the exceptions to the master's report and the date of the entry of the decree, by inserting a paragraph setting forth specifically that the Champaign County Abstract Company and its grantees and successors in interest were estopped to deny the validity of the mortgage referred to in the assumption clause of their deeds. It was entirely within the discretion of the court to permit this amendment at the time decree was entered even before the adoption of the new Practice Act.

Because of the views expressed herein the decree awarding foreclosure to the appellee D. Alice Taylor is hereby affirmed.

*Affirmed.*